# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

  Plaintiff,

v.

                Case No. 18-40059-DDC

THOMAS S. FRITZEL (01),
KEELA LAM (02),

  Defendants.

## MEMORANDUM AND ORDER

  Defendant Thomas S. Fritzel has served a subpoena on the City of Lawrence, Kansas under Fed. R. Crim. P. 17. Doc. 59-1. This subpoena commanded the City to produce "All documents"—including ESI—"relating to or pertaining to the 12th & Oread Tax Increment Financing District [and the] 12th & Oread Transportation Developmental District." *Id.* at 2. The subpoena's request includes all communications between and among the City's staff, "its outside counsel and auditing advisors, City Commissioners, Douglas County officials, [and] the Kansas Department of Revenue." *Id.* But, the subpoena continues, the request is "limited to the personnel listed" in the subpoena. It then lists, by name, 31 individuals who are associated with five or more organizations—including specific City Commissioners. *Id.* In response, the City moved to quash the subpoena. *See* Doc. 59. In context, it is evident the City's motion seeks to quash the subpoena in its entirety. Mr. Fritzel and his co-defendant, Keela Lam, filed a response to the City's motion. *See* Doc. 62. The court then set the City's motion for hearing.

  The City appeared by its outside counsel, Jennifer Hannah. Mr. Fritzel appeared in person and by his counsel of record, Edward F. Novak and Thomas G. Lemon. Ms. Lam

likewise appeared in person and by her counsel of record, James R. Wyrsch. The court heard arguments from Ms. Hannah, Mr. Novak, and Mr. Wyrsch. The court did not hear from the United States as it did not appear for the hearing.[1]

During the hearing, the City's counsel reiterated the reasons asserted in its motion, *i.e.*: (1) the subpoena is so broad and far reaching that it is "both unreasonable and oppressive" and thus inconsistent with the standards of Rule 17; and (2) the subpoena seeks documents "protected by the attorney-client privilege and the attorney work-product privilege." Doc. 59 at 4-7. The City also reported that the parties had met and conferred about resolving their disputes but, so far, had not reached agreement. *Id.* at 9. Mr. Fritzel's counsel confirmed the discussions and likewise agreed that the parties' disputes remain unresolved. Also, both parties confirmed that that they were amenable to continuing their discussions.

After hearing from counsel, the court concludes that it currently lacks the requisite information to rule the City's motion. Hoping to assist the parties' continuing efforts, the court briefly summarizes its current views about the disputes, below.

On the City's first argument—the subpoena is so burdensome that it's unreasonable and oppressive—both sides make some valid points. Mr. Fritzel's subpoena undoubtedly cuts a wide swath. For one thing, it uses the dreaded omnibus terms "relating or pertaining to." It uses those connectors to sweeping requests for "[a]ll documents, including electronically stored information" that connect—in some undescribed way—to two financing districts created by the City. The subpoena places no limit on the duration of its request and the Indictment alleges that the two financing districts have existed for more than 11 years. Long ago, our court recognized

---

[1] The Assistant United States Attorney explained his absence, reporting that he had a conflicting setting and in any event lacked standing to address the motion.

that often, a request constructed like this one is overly broad. *See*, *e.g.*, *Johnson v. Kraft Foods North Am., Inc.*, 238 F.R.D. 648, 658 (D. Kan. 2006) (quoted in *Waters v. Union Pac. R.R. Co.*, No. 15-1287-EFM-KGG, 2016 WL 4479127 (D. Kan. Aug. 25, 2016)).[2] This principle, pioneered in civil cases, would apply, at minimum, with equal force in the restricted setting of Rule 17 subpoenas.

But the City hasn't responded to this problem with what our cases suggest. In the civil context, the court has required persons responding to discovery requests to substantiate their positions. "Unless the request is overly broad or unduly burdensome on its face . . . the party resisting discovery [faces] the burden to support its objections. The objecting party must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, the discovery request is overly broad or burdensome by submitting affidavits or offering evidence revealing the nature of the burden." *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677 (D. Kan. 2004). And while this burden originates in the proportionality idea embraced by the Federal Rules of Civil Procedure, the recipient of a Rule 17 subpoena surely must do more than simply reprise the "overly broad and unduly burdensome" refrain.

At the hearing, the City's counsel reported that searching simply for "Toni Wheeler"— the City Attorney and one of the 31 names that the subpoena connects with the omnibus terms— produced 142,000 hits among the City's ESI. But this data point isn't all that meaningful because the challenged subpoena doesn't ask for every document containing Ms. Wheeler's name. Instead, it asks for all documents involving communications with Ms. Wheeler about two

---

[2] Judge Rushfelt explained why: "Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not. They require the [responding party] either to guess or move through mental gymnastics which are unreasonably time-consuming and burdensome to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request." *Audiotext Commc'ns. v. U.S. Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 18759 at *1 (D. Kan. Jan. 17, 1995).

specified financing districts. So, the limited information provided by the City to date doesn't do much to inform the inquiry whether the size and scale of the subpoena is reasonable or unreasonable.

The second of the City's two arguments asserts that the subpoena seeks privileged documents. By its terms, the subpoena appears to do so. *See* Doc. 59-1 (seeking documents between City employees and its outside counsel, Gary Anderson, then an attorney with the Gilmore & Bell law firm). But, defendants correctly note that not every communication between an organizational client and its counsel is protected by the attorney/client privilege. *See In re Grand Jury Subpoena to Kansas City Bd. of Public Utilities*, 246 F.R.D. 673, 678-79 (D. Kan. 2007) ("Not every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice [falls within the privilege] . . . Information is not privileged simply because it comes from an attorney. The mere fact that one is an attorney does not render everything [the attorney] does for or with the client privileged. Minutes of meetings attended by attorneys are not automatically privileged, and business documents sent to attorneys are not automatically protected."). And even this privilege or the work product doctrine protects records from discovery, a party may purposefully or inadvertently waive the protection. *See id.; see also* Fed. R. Evid. 502.

Here, defendants assert that the City produced 1,436 privileged documents to the government or the Grand Jury in response to one or more[3] Grand Jury subpoenas. The City confirms that it made this production, but it argues that it didn't waive the privilege over any of those documents because the production was an inadvertent one. But at the hearing, the City

---

[3] The parties don't even agree about how many Grand Jury subpoenas the City received. Their filings identify just one Grand Jury Subpoena. *See* Doc. 62 at 13 (subpoena dated May 10, 2016). In contrast, defendants assert that the Grand Jury issued three subpoenas to the City. *Id.* at 2. The United States couldn't provide any insight about this uncertainty because it didn't appear for the hearing.

4

couldn't explain precisely how it had produced the privileged documents and thus couldn't make any of the showings required by Fed. R. Evid. 502(b). So, the privilege portion of the dispute about the subpoena remains equally unsettled.

In sum, two things are evident. *One*, the parties' filings didn't provide sufficient information for the court to decide the current motion. *Two*, the parties' presentations at the May 20 hearing didn't change that conclusion. The best the court could do was to dispatch the parties to continue discussing a way to resolve or, at worst, narrow the dispute. But the court is unwilling to leave this dispute unmanaged and simply hope for the best. This case is complex, has a schedule in place that the court doesn't plan to amend, and defendants (and the public) have interests under the Speedy Trial Act. Thus, the court orders the parties and the City to comply with each of the following measures:

1. The City, Mr. Fritzel, and Ms. Lam must continue their discussions about the scope of the subpoena and conclude them by June 7, 2019. If they agree on revised language to define the subpoena's scope, they must submit that language to the court no later than June 12, 2019. **If they are unable to agree on this threshold dispute, each side must submit its proposed language to the court by June 12, 2019. For Mr. Fritzel and Ms. Lam, this requirement requires them to submit the narrowed language they are willing to deem acceptable. Likewise, the City's submission must identify the language it is willing to deem acceptable. The court will review each submission and take them up with the parties at a motion hearing on Monday, June 17, 2019, on the court's 1:30 docket in Topeka, Kansas.** At that hearing, the court will hear arguments from the City and defendants explaining why the scope of the language each party proposes is: (a) most nearly consistent with

5

Rule 17's standards; and (b) most efficiently balances defendants' need for things in the City's possession while minimizing the burden on the City, as the responding party. The court is likely to choose one proposal or another, selecting the one that, in the court's judgment, best satisfies the considerations described in (a) and (b), above. To articulate the premise implicit in this process, it is highly unlikely the court will quash the subpoena in its entirety. The government has had the opportunity to collect evidence from the City through a compulsory grand jury subpoena (or subpoenas). The defendants are entitled to use compulsory process to access information they need to defend themselves.

2. **By June 12, 2019, the parties and the City must submit a proposed process for resolving any privilege issues presented by the revised scope of the subpoena.** Again, if they can agree on a set of procedures, they should submit it jointly. If they cannot agree, each one may submit its own proposal accompanied by citation to legal authority justifying its position. These filings need be no longer than five pages, and the court imposes that page limit on each party and the City.

3. At the hearing on **June 17, 2019**, the court will hear the parties' proposal(s) about how to resolve the waiver dispute over the 1,436 pages that the City reportedly provided in response to a Grand Jury subpoena. Unless the parties can stipulate to some or all of the operative facts that define what happened, to whom, and when, the court anticipates it will need to conduct an evidentiary hearing to determine the factors that affect the waiver analysis established by Fed. R. Evid. 502. The court cannot resolve that dispute properly without a factual record of some kind.

**IT IS SO ORDERED.**

**Dated this 28th day of May, 2019, at Kansas City, Kanas.**

                                        **s/ Daniel D. Crabtree**
                                        **Daniel D. Crabtree**
                                        **United States District Judge**